HARVARD
LAW SCHOOL
LIBRARY.

### HANNAH COLEMAN vs. STATE.

Upon the trial of an indictment against a free woman for leasing a house to be kept as a bawdy-house, a *slave* who co-habits with her as man and wife is a competent witness for her.

## APPEAL from St. Louis Criminal Court.

SHREVE, for plaintiff in error.

That in order to convict the defendant under this indictment drawn upon the 19th section of Statute of Missouri, page 402, it is incumbent upon the State to show:

I. That the defendant leased the premises in question. There is no evidence to establish this fact.

II. It must appear from the evidence that the house was leased for the purpose of a bawdy-house. That it was so kept as to be a *nuisance* to the neighborhood. A bawdy-house is a nuisance at common law, and our statute no way changes or alters the common law meaning of the term. There is no proof whatever in this case, that the house in question was kept as a bawdy-house, so as to be a nuisance.

The defendant also points the court to the fact that the court below allowed the witness Matthew Ripley to substitute his individual opinion as to who *exercised* control over the premises, when they should only have permitted the witness to state the facts. It is every way analogous to the point repeatedly decided by the honorable supreme court, that a witness cannot state whether the defendant is guilty or not guilty of the charge for which he is indicted.

III. The remaining point to which the attention of the court is respectfully invited, is the fact that the court refused to allow the witness, John Coleman to be sworn as a witness in the case. By the record it appears that the witness offered to be sworn was a slave; that the defendant is a person of color, free, and in whose behalf, or against whom, Coleman might well be a witness. The objection insisted on by the State is suicidal, for it is admitted that there can be no marriage in contemplation of law between a slave and a free person of color, and

et insist that the relation of marriage can subsist so far as to exclude them from testimony for or against each other.

Marriage is a civil contract which can exist only between persons who are free, and capable of contracting. A slave cannot contract.

The court is referred in support of this point to Bonvier's L. Dic., Marriage, page 125; Shelford on Div. C. 1 sec. 1.

It is true that society has impliedly permitted certain conventional arrngements to be entered into between slaves for the purpose of propagating their species (a doubtful clemency) but no rights are guaranteed even by society to slaves who are permitted to co-habit with each other, and the relations they may have borne to each other for years is entirely at the disposal of their masters, and this right is daily exercised by separating those *quasi* marriages, even where a long line of progeny has been the result. All of which is respectfully submitted.

### LACKLAND, for the State.

I. This court can take no notice of the sustaining of the demurrer to the plea in abatement because the plea is not set out in the record, and it is impossible for the court to see whether any error has been committed.

II. The court erred in overruling the question asked the witness Ripley as to who was the owner of the property in question. If the witness knew the fact, he ought to have been permitted to state it. The means of acquiring such knowledge is immaterial. It cannot be contended that the State in such cases is bound to prove title in the defendant, as in a case of ejectment or the like. Because the ownership of the property is a matter collateral to the issue, and if it be required, it renders the law upon which this indictment is framed nugatory; for it would be impossible in almost every case for the State to show actual title by deeds, for in nine cases out of ten, perhaps, there is no such evidence of title.

III. The court did not err in refusing to let John Coleman testify in this cause. It may be true that technically he is not the husband of the defendant, but practically he is. It may be true that formally he is not her husband, but substantially he is. The law does not refuse to allow the husband or wife to testify for each other because of the mere technicality of the relationship they bear to each other, but because of solid reasons founded in wise policy. It is because of the love they are presumed to have for each other—the interest they are presumed to have in each other, and consequently the strong temptation to perjury; and because of the danger to which the domestic relation would be exposed by such proceedings. It cannot be doubted that such a relation may exist between slaves and free persons of color as to bring them within the scope of the reasons above mentioned, although not technically man and wife.

NAPTON, J., delivered the opinion of the court.

The only point deemed material to notice in this case is the exclusion of John Coleman as a witness for the defendant. The defendant was a free negro and indicted for leasing a house to be kept as a bawdy-house. The witness Coleman co-habited with her as man and wife, and the witness was a slave. The court refused to permit him to testify.

Our statute (Rev. Code '45, page 1090) declares that "no negro or mulatto, bond or free, shall be a competent witness, except in pleas of

the State against a negro or mulatto, bond or free, or in civil cases in which negroes or mulattos alone are parties."

This statute, perhaps, admits of more than one meaning. It may have designed simply to exclude negroes and mulattos from testifying in cases where either party was a white person, leaving their competency in other respects in criminal cases against negroes, and in civil cases where both parties are negroes, to be regulated by the general law of evidence applicable to white persons. Or, the statute may be interpreted to mean that in pleas of the State against a negro or mulatto and the other cases specified, negroes or mulattos, shall be competent witnesses, without regard to any other exceptions, which by the rules of evidence might have been taken.

I do not consider it material in the present case to determine which is the proper interpretation of the act. Adopting the first, the only one capable of sustaining the ruling of the criminal court, and we are still unable to see any authority for excluding the witness. A slave is incapable of contracting, and the law does not require any marriages between slaves, or between slaves and free negroes.

We know that marriages *de facto* exist among this class of persons, but as to the policy of applying the rules of evidence which by the law regulates the relation of husband and wife to co-habitations of this character, it may be safely left with the legislature. If it should be thought that the same reasons of public policy which prohibits the husband and wife from testifying for or against each other apply with equal force to these *de facto* marriages, the legislature have it in their power so to enact. Upon such a policy, there would be different opinions. We think it best to leave the matter where the statute law has placed it, believing that little if any inconvenience will result.

In England, the courts have never extended the rule, which excludes a husband and wife from testifying in cases where the one is concerned to any other co-habitation than a legal one. Wells vs. Hatcher, 5 Con. & P. 12; 1 Mood. & Rol. 99. And in North Carolina it has been held that slaves may be witnesses against each other, notwithstanding this relation between them. State vs. Samuell, 2 Der. & But. 177.

Judgment reversed and cause remanded.